UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEPARTMENT OF TOXIC SUBSTANCES CONTROL,<br><br>Plaintiff,<br><br>v.<br><br>TECHNICHEM, INC., et al.,<br><br>Defendants. | Case No. 12-cv-05845-VC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DTSC'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING NG'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 109, 127 |

## I.

The testimony of the defendants' expert, Dr. Lorne G. Everett, is inadmissible under Rule 702. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-95 (1993). An expert's testimony must "be both relevant and reliable." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 860 (9th Cir. 2014). Dr. Everett's testimony is not reliable. Most of his opinions about other potential sources of PCE contamination are based on speculation, and "speculative testimony is inherently unreliable." *Id.* at 861; *cf. Miller v. Mandrin Homes, Ltd.*, No. 05-cv-3025-CCB, 2007 WL 654214, at *5 (D. Md. Feb. 28, 2007) (ruling Dr. Everett's opinions inadmissible under Rule 702 "because they are speculative"). When he is not simply speculating, Dr. Everett often does no more than regurgitate information given to him by other sources (including self-serving assertions by the defendants). He "[does] not analyze his source materials so much as repeat their contents." *United States v. Mejia*, 545 F.3d 179, 198 (2d Cir. 2008). And Dr. Everett's investigation otherwise appears to have been cursory and unscientific. *Cf. Ollier*, 768 F.3d at 861. For example, he concluded that PCE is associated with wrecking

yards based on information he found when he "Googled 'wrecking yards' and 'contamination.'" Everett Deposition at 61:13-62:3.

Key factual errors in Dr. Everett's declarations further undermine their reliability. For example, Dr. Everett asserted that "the highest PCE concentration in soil (410,000 ug/kg at TECH-A3W-S-2.0) is found along the very eastern boundary of the building." First Everett Declaration ¶43. According to Dr. Everett, this soil concentration "is indicative of an offsite source to the east" of the Technichem site. First Everett Decl. ¶43. It appears he was attempting to bolster his otherwise speculative assertion that contamination could have come from the Sherwin-Williams site, which is northeast of the Technichem site. *See id.* at ¶¶27-29, 42-43. But in truth, the soil concentration discussed by Dr. Everett was found on the western side of the site, undermining his attempt to attribute that reading to the Sherwin-Williams site. Sullivan Declaration, Exhibit G. Even worse, Dr. Everett lambasted DTSC's witnesses for allegedly overlooking "the historical presence of a number of nearby dry cleaners" that, according to Dr. Everett's investigation, were located near the Technichem site, on Park Avenue in Emeryville. First Everett Declaration ¶44. But the evidence submitted by DTSC indicates that these dry cleaners were located on Park *Street* in *Alameda* – nowhere near the Technichem site. Dr. Everett opined that he would be "Daubert-ed out" if his investigation into "alternative sources of contamination like these dry cleaners" were inadequate. Everett Deposition at 134:1-7. He is correct.

By contrast, the testimony of DTSC's expert, Dan Gallagher, is admissible under Rule 702. Gallagher's testimony (i.e., that the pattern of PCE contamination in soil samples is consistent with PCE release at the Technichem site, and inconsistent with PCE release from other sources) is relevant to the central issue in this case. And Gallagher's testimony exhibits important indicia of reliability. First, Gallagher's "theory or technique can be tested." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc). For example, soil contamination patterns at a suspected PCE release site (like the Technichem site) can be compared to soil contamination patterns at known PCE release sites. Second, Gallagher's basic

2

technique "has been subjected to peer review and publication." *Id.*; *see, e.g.*, Mette M. Poulsen & Bernard H. Kouper, *A Field Experiment to Study the Behavior of Tetrachloroethylene in Unsaturated Porous Media*, 26 ENVTL. SCI. & TECH. 889 (1992); Michael Rivett, *Soil-Gas Signatures from Volatile Chlorinated Solvents: Borden Field Experiments*, 33 GROUND WATER 84 (1995). Third, similarly, Gallagher's basic technique seems to "enjoy[] general acceptance within the relevant scientific community." *Estate of Barabin*, 740 F.3d at 463. And, stepping back, it's not surprising that Gallagher's technique is widely accepted. At bottom, Gallagher's testimony is premised on straightforward ideas: for example, that PCE released into soil will disperse outward from the point of release, and that the absence of PCE in groundwater "upstream" from a site suggests that groundwater did not carry PCE into the site.

## II.

In light of the admissible evidence, any reasonable trier of fact would have to conclude that Technichem released PCE into the soil. It's undisputed that Technichem handled large amounts of PCE. It's also clear that Technichem was not always particularly careful in handling PCE: Technichem employees dumped PCE-contaminated liquids into dumpsters "every week," and often spilled some of it in the process. Rodriguez Deposition 36:20-37:10, 42:6-43:5. According to a DTSC employee, "DTSC contractors removed approximately 745 tons of PCE-contaminated soil from under the building where Technichem operated, in the location of the former Technichem PCE processing and storage areas." Toth Declaration ¶10. And the analysis of DTSC's expert shows that soil conditions are consistent with PCE release at the Technichem site, and inconsistent with PCE contamination from some other source. First Gallagher Declaration ¶¶9-39.

In response to this evidence, the defendants offer endless, groundless speculation that the PCE in the soil at the Technichem site could possibly have materialized from elsewhere. But they are unable to create a genuine factual dispute for two reasons.

First, Technichem's liability turns on whether PCE from Technichem contaminated the Technichem site at all – not whether other parties also contributed to the contamination of the

Technichem site.  Technichem can't escape CERCLA liability at summary judgment unless there's a fact dispute about whether *any* of the PCE that contaminated the soil came from Technichem.  But the defendants have merely tried to show that other sources might have contributed to the PCE contamination under the Technichem site, without trying to show that Technichem didn't also contribute to that contamination.

Second, in any event, the defendants have no evidence linking any other source to the PCE contamination under the Technichem site.   The defendants speculate that other industrial sites in the area used PCE, and that some of those sites released PCE into the groundwater, and that this PCE-contaminated groundwater flowed into the Technichem site, and that all of this happened without leaving physical evidence.  Alternatively, the defendants speculate that the PCE was carried into the Technichem site in contaminated landfill (although they have no evidence of this, either).  But "to survive summary judgment, [the defendants] must establish a genuine factual dispute, which involves more than some metaphysical doubt as to the material facts."  *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 803 F.3d 1084, 1088 (9th Cir. 2015).[1]

It's clear that the other requirements of CERCLA liability are satisfied as to Technichem.  There can be no doubt that the Technichem site is a "facility."  *See* 42 U.S.C. § 9601(9).  It's undisputed that DTSC incurred costs in response to the release of PCE at the Technichem site.  Toth Declaration ¶¶10-15; *see* 42 U.S.C. § 9607(a)(4).  And Technichem obviously "direct[ed] the workings of, manage[d], or conduct[ed] the affairs of" its own facility throughout the entire time it was in operation, which means that it qualifies as an "operator" under CERCLA.  *United States v. Bestfoods*, 524 U.S. 51, 66 (1998).

Meanwhile, almost all of Technichem's asserted affirmative defenses are unavailable, as a matter of law, as defenses against CERCLA liability.  There are only three defenses to CERCLA liability: that the release of a hazardous substance was caused by "an act of God," that it was

---

[1]  For the same reason, Technichem has not borne "the burden of proving that a reasonable basis for apportionment exists" between itself and other possible sources of PCE.  *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 614 (2009).

caused by "an act of war," and that it was caused by "an act or omission of a third party other than an employee or agent of the defendant."  42 U.S.C. § 9607(b); *California ex rel. Cal. Dep't of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 672 (9th Cir. 2004).  And though Technichem does raise "act of God" and "act or omission of a third party" defenses, as discussed above there's no evidence to support either one.

Accordingly, DTSC's motion for partial summary judgment against Technichem is granted.

### III.

In contrast to Technichem's liability, the question of Ng's liability can't be resolved at summary judgment.  "'[O]perator' liability under [CERCLA] only attaches if the defendant had authority to control the cause of the contamination *at the time the hazardous substances were released into the environment*," *Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp.*, 976 F.2d 1338, 1341 (9th Cir. 1992) (emphasis added).  The evidence does not conclusively establish that Ng was an operator of Technichem at the time the company released PCE.  Though Ng (the company's founder and longtime president) ran Technichem through at least the mid-1990s, he testified that he "took a different role" in the mid-1990s, and "Steve Tung took over management" at that time.  Ng Deposition at 34:12-19.  This evidence, viewed in the light most favorable to Ng, could support a finding that Ng was no longer an "operator" of Technichem's facility after the mid-1990s.  Indeed, DTSC's own complaint alleges only that Ng "managed, directed, or conducted operations" at the Technichem site during "*some of the time* that Technichem operated its business at the Site."  Complaint ¶14 (emphasis added).[2]  And because DTSC hasn't sought to prove that the release of PCE from Technichem occurred at any particular time, the current record does not preclude an inference that the entire PCE release happened after

---

[2] It's true that, even in Ng's account, he "was responsible for permitting" at Technichem after the mid-1990s.  Ng Deposition at 34:15-17.  But there's no further evidence about what this means.  Someone who is "responsible for permitting" does not automatically fall into the category of people who "manage, direct, or conduct . . . decisions about compliance with environmental regulations."  *Bestfoods*, 524 U.S. at 65.

5

the mid-1990s.  Accordingly, DTSC's motion for summary judgment against Ng is denied.[3]

On the other hand, a trier of fact could find that Ng was, in fact, an "operator" of Technichem when Technichem released PCE.  First, there's evidence that Ng remained an "operator" for the entire period (from 1987 to 2003) when Technichem may have released PCE.  Contrary to Ng's account, a Technichem employee testified that Ng ran Technichem until 2004.  Tom Deposition at 17:23-18:13.  Consistent with this testimony, there's also evidence that Ng remained Technichem's president until 2002.  *See* Ng Deposition at 194-95.  Based on this evidence, a trier of fact could find that Ng remained an "operator" until 2003, and was thus an "operator" for the entire period when the PCE release may have occurred.  Second, a trier of fact could infer that Technichem's release of PCE began (or even ended) before the mid-1990s – a time when Ng was indisputably an "operator."  Because a trier of fact could find (in either of these two ways) that Ng was an "operator" of the Technichem facility when that facility released PCE, Ng's cross-motion for summary judgment is denied.

**IT IS SO ORDERED.**

Dated: March 15, 2016

VINCE CHHABRIA
United States District Judge

---

[3] In a post-hearing filing, DTSC requested "the opportunity to introduce additional evidence that would further demonstrate that the record taken as a whole could not lead a rational trier of fact to find that Ng was not an operator at Technichem during the period after 1996."  DTSC complained that it "could not have anticipated . . . that Ng's counsel would continue to float new and often contradictory factual contentions" about his status as an operator.  But Ng raised this issue in his first brief on these cross-motions, arguing that he "oversaw Technichem's business operations only from 1987 until 1996."  Dkt. No. 127 at 20.  And DTSC itself had already submitted evidence (Ng's deposition testimony) that supported Ng's argument.  DTSC was thus on notice of this issue by the time it submitted its reply in support of its motion for summary judgment.